UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER A. RAMSEY and | ) | |
| OAKWOOD TRADING, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-0239-CVE-SAJ |
| | ) | |
| BANK OF OKLAHOMA and | ) | |
| WILLIAM CLUNE, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Combined Motion to Dismiss and Brief in Support (Dkt. # 14). Defendants argue that plaintiffs' claims are barred by the statute of frauds and are based on the alleged failure of the Bank of Oklahoma ("the Bank") and William Clune to disclose confidential information about another Bank customer.

## I.

Christopher A. Ramsey and Oakwood Trading, LLC allegedly obtained financing from the Bank, through Clune as the Bank's representative, for numerous cattle ventures dating back to 1985. Plaintiffs allege that Clune not only set up the financial transactions, but also served in an advisory capacity. Specifically, plaintiffs claim that Clune would identify cattle companies and feed lots with which plaintiffs should consider conducting business. Plaintiffs allege that they would conduct business with a cattle company or feed lot only after Clune researched the company and advised plaintiffs that it would be a sound investment. According to plaintiffs, Clune would recommend which type and how many cattle to buy, and the sale price and purchase date for the cattle.

Plaintiffs assert that they executed a Revolving Credit and Security Agreement ("Credit Agreement")[1] with the Bank on June 30, 2005. The Credit Agreement established a $5 million line of revolving credit and granted the Bank a security interest in collateral owned by Oakwood Trading. Dkt. # 26-2. The Credit Agreement does not contain any provisions addressing the alleged agreement between plaintiffs and Clune for advisory services in connection with any loan. However, plaintiffs state that Clune voluntarily assumed fiduciary duties in the Credit Agreement because he agreed to act as an "attorney-in-fact" for plaintiffs in certain matters. Plaintiffs allege that they entered the Credit Agreement with the understanding, based on a separate oral agreement, that Clune would undertake "(1) to identify and recommend sound feedlots for plaintiffs, (2) to keep an eye on the financial condition of feedlots for plaintiffs, (3) to determine which feedlot would be best for plaintiffs, and (4) to approve details and terms of the cattle feeding operation and feedlot arguments." Dkt. # 26, at 23.

Plaintiffs allege that this agreement was satisfactory for all parties until 2006. Plaintiffs claim that Clune failed to notify them in late 2006 that Great Plains Cattle Feeders ("Great Plains") was suffering severe financial problems. Great Plains allegedly owed plaintiffs approximately $400,000 but was unable to pay. The parties agree that Great Plains was a customer of the Bank. Plaintiffs allege that Clune knew of Great Plains' financial difficulties but failed to relay this information to plaintiffs. According to plaintiffs, the Bank actively attempted to collect from Great Plains for debts owed to the Bank, and breached its duties to protect plaintiffs' investment. The

---

[1] The Credit Agreement is attached to plaintiffs' response to the motion to dismiss. The Court will consider this agreement, as discussed in III.A. infra.

Bank contends that it was required to keep this information confidential, because the status of a depositor's or customer's account is private information exchanged between a bank and its client.

Plaintiffs filed this lawsuit against the Bank and Clune alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty by Clune, and negligence. Defendants filed their motion to dismiss based on two general propositions: (1) plaintiffs' claims are barred by the statute of frauds; and (2) the Bank had an obligation not to disclose financial information about another client. The Bank argues that plaintiffs' complaint fails to state a claim upon which relief can be granted and seeks dismissal of plaintiffs' claims with prejudice.

## II.

A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the claim "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 1965; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are

3

conclusory in nature. <u>Erikson v. Pawnee County Bd. of County Comm'rs</u>, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." <u>Hall v. Bellman</u>, 935 F.2d 1106, 1109-10 (10th Cir. 1991).  In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. <u>Twombly</u>, 127 S. Ct. at 1974.

### III.

Defendants seek dismissal of all of plaintiffs' claims under Rule 12(b)(6) under two general theories.  First, defendants argue that plaintiffs' claims are barred by the statute of frauds, because the alleged oral promises supporting plaintiffs' claims are not in writing.  Second, defendants assert that plaintiffs are trying to impose liability on defendants for failing to disclose information about another of the Bank's customers, but the Bank has an affirmative duty under Oklahoma law to keep this information confidential.  Defendants also address each of plaintiffs' claims individually and assert that each claim fails to state a claim upon which relief can be granted.

### A.

The Bank argues that the statute of frauds, OKLA. STAT. tit. 15, § 140, bars all of plaintiffs' claims, because plaintiffs are attempting to rely on an oral agreement between a bank and its borrower that must be in writing to be enforceable.  Plaintiffs respond that the Credit Agreement was a security agreement in addition to a credit agreement, and the alleged oral agreement between plaintiffs and defendants for advisory services is enforceable.  Plaintiff also raises several alternative theories in an attempt to avoid the requirement that credit agreements must be in writing to be enforceable under Oklahoma law.

The Credit Agreement does not contain any language that would require the Bank or Clune to act as plaintiffs' financial advisors, and plaintiffs' breach of contract claim is based on an oral agreement allegedly made between the Bank and plaintiffs.  Oklahoma law provides that:

> No lender or borrower may maintain an action to enforce or seek damages for the breach of any term or condition of credit agreement having a principal amount greater than Fifteen Thousand Dollars ($15,000.00), unless such term or condition has been agreed to in writing and signed by the party against whom it is sought to be enforced or against whom damages are sought.

Okla. Stat. tit. 15, § 140B. A credit agreement is defined as "an agreement by a financial institution to lend money, extend credit or otherwise make any other financial accommodation, or to renew, extend, modify, rearrange or forebear the repayment of any such loan, extension of credit or financial accommodation, but does not include any promissory note, real estate mortgage, or security agreement."  Id. at § 140A.1.  The Oklahoma Supreme Court has discussed the purpose of § 140:

> Statutes similar to [§ 140] have been enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with a borrower which the borrower construes as an agreement.  They are intended to discourage lender liability litigation and to promote certainty into credit agreements.  The statutes are intended as a reform measure to regulate the number and variety of causes arising as lender liability actions.

Brown v. Founders Bank & Trust Co., 890 P.2d 855 (Okla. 1994).

Plaintiffs have attached to their response a copy of the Credit Agreement and the Third Amendment to the Credit Agreement, to support their argument that the contract at issue was a security agreement rather than a credit agreement.  When ruling on a motion to dismiss under Rule 12(b)(6), a court may consider documents referenced in the complaint that are central to the plaintiff's claims.  Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008); Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253 (10th Cir. 2005).  If the documents meet this test, a court has the discretion to

consider them when ruling on a motion to dismiss, but such consideration is not mandatory. <u>Prager</u> <u>v. LaFaver</u>, 180 F.3d 1185, 1189 (10th Cir. 1999).  The complaint refers to "plaintiffs' agreements with the bank" and it appears that plaintiffs are generally referring to an oral agreement between plaintiffs and Clune as the basis for their lawsuit.  Neither the Credit Agreement or the Third Amendment to the Credit Agreement are specifically mentioned in the complaint.  In any event, the Credit Agreement does not contain the four promises repeatedly referenced by plaintiffs in their response to defendants' motion to dismiss and it is not clear that the Credit Agreement is the contract upon which plaintiffs are suing.  However, plaintiffs do refer to their general and longstanding agreement with the Bank to maintain a line of credit, and the Credit Agreement is the underlying document of this arrangement.  The Court will exercise its discretion to consider the Credit Agreement and Third Amendment to the Credit Agreement when ruling on defendants' motion to dismiss.

The primary purpose of the Credit Agreement was to reduce to writing the terms upon which the Bank would extend a $5 million line of credit to plaintiffs and secure the Bank's investment. Plaintiffs' argument that the Credit Agreement should be treated as a security agreement is largely irrelevant, because the Credit Agreement is not the source of plaintiffs' claims against the Bank and Clune for advisory services.  The Credit Agreement did not require the Bank to act as a financial advisor to plaintiffs or to monitor plaintiffs' investments.  Based on plaintiffs' complaint, it appears that they were relying on an oral agreement by Clune to preliminarily review plaintiffs' investments and "keep[] an eye on the financial condition and business situation of cattle companies and feedlots he recommended to them."  Dkt. # 2, at 2.  The Court does not need to determine whether the Credit Agreement should be treated as a security agreement, because this issue is not relevant.  Instead, the

6

relevant issue is whether the alleged oral agreement upon which plaintiffs rely in this lawsuit is subject to the writing requirement of § 140.

The Tenth Circuit, interpreting Oklahoma law, has held that additional oral terms that are not included in a written credit agreement are unenforceable under § 140, and such oral terms or agreements will not support a lawsuit against a commercial lender.  Walker v. First Nat'l Bank of Medicine Lodge, 129 Fed. Appx. 411, at *2 (10th Cir. April 6, 2005).[2]  In Walker, the plaintiffs alleged that the bank orally represented that it would "remain in the local area making agricultural loans for a substantial period of time, and that [the note] would be renewed so long as the Borrowers met certain financial conditions."  Id. at 413.  The district court's decision to dismiss the plaintiff's claims of breach of contract, promissory estoppel, and lender liability was affirmed on appeal, because the alleged oral representations were not included in the loan documents or any other writing between the parties.

The alleged oral agreement between Clune and plaintiffs creates additional duties that plaintiffs believed the Bank would perform in connection with the Credit Agreement.  Plaintiffs' claims are based on the theory that the Bank agreed to extend them a $5 million line of credit and monitor plaintiffs' investment.  For example, plaintiffs allege that:

> Mr. Clune would also review and approve terms between the companies and feedlots and plaintiffs concerning which and how many cattle to buy, composition of the herd, costs, weights, breakeven amounts, and sale dates and prices.  Plaintiffs did not buy cattle until Mr. Clune had approved this information provided by cattle companies and feedlots.  The Bank would then finance part of the cost of buying and feeding the cattle.

---

[2]      Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1: 10th Cir. R. 32.1.

Dkt. # 2, at 3.  In other words, plaintiffs decision to tap into its credit line with the Bank was allegedly dependent upon Clune's approval of a transaction, and the Credit Agreement and alleged oral agreement to provide financial advice were intertwined.  Under plaintiffs' own theory of the case, the Credit Agreement and the alleged oral agreement are part of the same contract.  Therefore, the Bank's and Clune's alleged promises to act as plaintiffs' financial advisors are not enforceable unless they are in writing.

Plaintiffs raise several arguments in an attempt to avoid the writing requirement of § 140. They argue that the Bank violated other provisions of the Credit Agreement and their breach of contract claim can survive dismissal.  Plaintiffs cite section 5.3 of the Credit Agreement and claim that the Bank had the power to collect plaintiffs' accounts receivable for collateral.  They allege the Bank failed to exercise this right, which violated the Credit Agreement.  They also cite section 5.6 of the Credit Agreement, which states in relevant part:

> The Lender may from time to time, at its option and without notice to the Borrower, perform any obligation to be performed by the Borrower hereunder which the Borrower shall fail to perform, and take any other action which the Lender deems necessary for the maintenance or preservation of the Collateral or its security interest in the Collateral.

Dkt. # 26-2, at 7.  The Court notes that neither of these sections of the Credit Agreement is cited in the complaint and plaintiffs' breach of contract claim is not based upon either of these sections. Even if plaintiffs had cited sections 5.3 or 5.6, these sections provide the Bank authority to act on its own behalf to protect its investment, and these are not obligations that the Bank owes to plaintiffs.  Consequently, failure to act under either section does not give rise to a breach of contract claim.

Plaintiffs argue that the oral agreement was outside the Credit Agreement and is not subject to the statute of frauds, because the oral agreement does not independently qualify as a credit agreement under Oklahoma law.  They argue that § 140 applies specifically to the terms of a credit agreement concerning the extension of credit or a loan, and the oral agreement is enforceable even if the Credit Agreement itself is subject to the statute of frauds.  However, the Court has already determined that the oral agreement contained conditions that plaintiffs believed were part of the underlying Credit Agreement, and plaintiffs may not attempt to isolate the oral agreement from the Credit Agreement to avoid application of the statute of frauds.  Defendants note that § 140 was intended to protect lenders from liability "against claims raised by sophisticated borrowers" and, based upon plaintiffs' 23 years of experience in the cattle business, plaintiffs should have known that any agreement with the Bank should have been in writing.  Brown, 890 P.2d at 863.  Although the Court makes no finding about plaintiffs' status as sophisticated borrowers, defendants raise a legitimate point.  Plaintiffs are attempting to incorporate unwritten terms into the Credit Agreement and these terms, if construed as plaintiffs' suggest, would essentially require the Bank to insure plaintiffs' losses for amounts borrowed under the Credit Agreement.  The Credit Agreement does not reflect that the Bank agreed to assume such liability and the proposed oral terms would substantially modify the parties' agreement.   Therefore, the alleged oral agreement is not enforceable.

Plaintiffs argue that the oral agreement is an executed oral agreement under Oklahoma law and is enforceable even if it was not included in the Credit Agreement or any other writing. Defendants respond that the alleged oral agreement was not fully performed and may not be treated as an executed oral agreement.  A written contract may be modified in writing or by an executed oral

9

agreement.   OKLA. STAT. tit. 15, § 237.   To qualify as an executed oral agreement, the oral agreement or amendment must be fully executed to have any effect on the underlying written contract.   Kenison v. Baldwin, 351 P.2d 307, 309 (Okla. 1960); see also Dewberry v. Universal C.I.T. Credit Corp., 415 P.2d 978, 979 (Okla. 1966) ("An oral agreement modifying a written contract, although established, is ineffective to alter the terms of the written contract until its terms have been fully executed.").   Assuming that the alleged oral agreement existed, plaintiffs have not alleged that the agreement was fully executed.   In fact, the complaint alleges that defendants ignored their alleged obligation to serve as plaintiffs' financial advisor and harmed plaintiffs through inaction.   This type of alleged inaction may not be classified as an executed oral agreement, because there is no allegation of any performance by defendants that would modify the terms of the written contract.

Lastly, plaintiffs argue that defendants had an obligation to warn plaintiffs of Great Plains' financial condition and the statute of frauds does not apply.   Plaintiffs claim that the Oklahoma Supreme Court has recognized an exception to § 140 permitting a party to proceed with a fraud claim against a lender, even if the party is relying on oral terms omitted from the written agreement. See Brown, 890 P.2d at 863-64.   However, plaintiffs have not alleged a fraud claim in their complaint and Brown is inapplicable.   Walker, 129 Fed. Appx. at 413-14 (Brown does not stand for the proposition that "mere allegation of fraud avoids application of the statute of frauds to contract and other claims").   Brown recognized a narrow exception to the statute of frauds, but the exception is not applicable in this case.

The Court finds that the alleged oral agreement was not included in the written Credit Agreement and is unenforceable under the statute of frauds.   This is a complete bar to plaintiffs'

10

claims for breach of contract, bad faith, breach of fiduciary duty, and negligence, because all of these claims arise out of the Bank's and Clune's alleged failure to advise plaintiffs about the status of their investment.

## B.

Defendants argue that plaintiffs are attempting to hold the Bank and Clune liable for failing to disclose confidential information about a Bank customer, but such disclosure would be illegal under Oklahoma law and may not form the basis for a contract or tort claim. Plaintiffs respond that customer privacy is not a defense, because defendants put themselves in a difficult situation by advising plaintiffs to do business with a Bank customer. Under Oklahoma law, a bank has a duty to keep its customer's financial status confidential and to refuse to disclose such information without the consent of its customer. Djowharzadeh v. City Nat'l Bank & Trust Co. of Norman, 646 P.2d 616, 619 (Okla. Civ. App. 1982). A customer may sue a bank for unauthorized disclosure of information submitted in connection with a loan if the manner of disclosure was inconsistent with the "protection of a loan customer's privacy interests." Jordan v. Shattuck Nat'l Bank, 868 F.2d 383, 387 (10th Cir. 1989).

Plaintiffs argue that the Bank overstates the extent of customer confidentiality, and that the duty of confidentiality is limited solely to information disclosed on a loan application. In Djowharzadeh, a regular customer of a bank learned of a possible real estate investment and approached his bank about obtaining a loan to purchase the property. Djowharzadeh, 646 P.2d at 617. The customer described the investment in the loan application and the loan officer assigned to the application believed that the investment was worth substantially more than the customer realized. The loan officer rejected the customer's application and informed bank officials of the

investment opportunity.  The bank's president and senior vice-president, through their wives, purchased the property and realized a substantial profit.  Id. at 618.  The Oklahoma Supreme Court recognized a duty between a bank and its customer to keep information on a loan application confidential.  Considering the intimate and detailed nature of the required disclosures and the uneven position of the two parties, customer privacy is essential to protect the bank's customer and ensure the public trust in banking institutions.  Id. at 619-20.

Although Djowharzadeh discusses only disclosure of information on loan applications, there is no reason why its holding should be construed as narrowly as plaintiffs propose.  There is no substantial difference between information disclosed on a loan application and information the Bank obtains through private dealings with its customer.  The nature of plaintiffs' claims shows that plaintiffs are faulting the Bank for failing to disclose precisely the kind of information that the Bank has an obligation to protect from public disclosure.  Plaintiffs' complaint alleges that Clune was assigned to Great Plains' account at the Bank and he "connected" plaintiffs with the owners of Great Plains.  Dkt. # 2, at 3.  Clune allegedly obtained information about Great Plains' "deteriorating financial situation" through his duties at the Bank, but he failed to disclose this information to plaintiffs.  Id.  If Clune had disclosed Great Plains' financial condition to plaintiffs based on information he learned as a Bank employee, he could have exposed the Bank to substantial liability.  The Bank's position is consistent with Djowharzadeh and, under the facts alleged in the complaint, both the Bank and Clune had an obligation to keep Great Plains' financial information confidential.

Plaintiffs also argue that customer confidentiality is not relevant, because the information which defendants should have disclosed to plaintiffs was not confidential.  However, plaintiffs have not alleged that Great Plains' financial condition was publicly known.  In fact, plaintiffs' claims are

12

based on the premise that Great Plains' status was known to the Bank through its private dealings with Great Plains, and the Bank could have prevented harm to plaintiffs by disclosing information that plaintiffs could not have gained from a public source.  See Dkt. # 2, at 3 ("According to Mr. Clune, the Bank started noticing problems in its relationship with Great Plains well before plaintiffs did.  However, at no time did he or anyone else at the Bank advise plaintiffs of the relevant facts."). In other words, plaintiffs have succinctly alleged that the Bank followed the law by keeping customer information confidential and, therefore, this Court will not impose liability on the Bank or Clune for honoring their duty of customer confidentiality.  Any alleged oral promise that would have required the Bank or Clune to disclose confidential information about the Bank's customer is unenforceable and, as the disclosure of confidential financial information is the basis for each of plaintiffs' claims, this case should be dismissed.

**IT IS THEREFORE ORDERED** that Defendant's Combined Motion to Dismiss and Brief in Support (Dkt. # 14) is **granted**.  A separate judgement of dismissal is entered herewith.

**DATED** this 17th day of November, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

13